## Shearer v. Commonwealth.

May 7, 1946.

251

Ross, Ross & Bayer for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

From a judgment convicting him of the voluntary manslaughter of Charles Masters with penalty of two years confinement in the penitentiary, Willis S. Shearer now takes this appeal.

Grounds assigned for reversal are: (1) error in admission of a purported dying declaration as competent evidence and (2) error in rejection of other competent evidence offered by this appellant and (3) error in failure to instruct the jury on emotional insanity.

Willis S. Shearer drove up to a filling station in or near Richmond in the afternoon of June 22, 1945. There he encountered his estranged wife in close conversation with Charles Masters with whom she had been on terms of some degree of intimacy. Shearer, either upon a demonstration of threatening hostility by Masters or else

without any apparent provocation whatever, drew a pistol and shot Masters. A scuffle then followed between Shearer and Masters over the pistol and it ended after Masters had been shot four times altogether by Shearer. Masters, who was unarmed at the time of his encounter with Shearer, died about a day and a half later as a result of the wounds he received at the hands of Shearer.

The first question confronting us is that of the competency of Masters' dying declaration as evidence that was used on this trial as part of the convicting force against Shearer. E. M. Masters, father of the man who was killed, held a conversation with Charles Masters at the hospital in Richmond on the morning the latter died and just a few hours before death occurred. E. M. Masters testified, as we find from reading the transcript of evidence, in the following rather confused language, which incorporated the dying declaration now under consideration on this appeal, viz.:

"A. He said, 'I am not going to get over this and do you know just exactly how this happened.' I said, 'Charley, I think I do, but tell me again so I will know for sure.' And he told me. He said, 'I parked my car out at the filling station and had gotten six gallons of gas.' He said, another car pulled up behind mine and I pulled my car right straight ahead and parked it there. Every three or four days I would pay them there at the filling station, and I thought I would just pay them that day. I had the money in my pocket. And I walked back on the pavement and Mrs. Shearer's car happened to be the car behind mine, and she said the man that ran the filling station had gone inside, and I was standing there with either his elbow or his hand, don't know just which, on Mrs. Shearer's car talking to her about an A stamp, but he never said what about the A stamp. Just said talking to her about the A stamp, and said before he knew it that Shearer was right on him with a big pistol shooting. He said, he grabbed the pistol and tried to take it away from him and said in the scuffle he shot me. I said, How many times did he shoot you? He said, four times. I said, then what happened. He said, Mary got out of her car—he just called her Mary—and she tried to get the pistol and did jerk it out of both our hands and ran with it, and he said, 'I sat down close on the grass,' I believe by the telephone pole, he said, 'Raymond Rice came along and I hollowed at Raymond and

asked him to take me to the Hospital that I was shot.' Then I asked him about whether he wanted me to do anything, whether there was anything he wanted one, and he said, 'no, everything is all right,' said, 'it won't be long.' "

The admission of a dying declaration in any case is an exception to the general rules of evidence. Therefore, to bring into operation this exceptional rule it must appear that the declaration was made in extremity, when the person was at the point of death, and when every hope of recovery was gone, every motive of falsehood was silenced, and the mind was induced by the most powerful considerations to speak the truth; such a situation is considered so solemn by the law as to create an obligation equal to that which is imposed by a positive oath administered in a court of justice. Petty v. Commonwealth, 178 Ky. 483, 199 S. W. 20.

The statements of a deceased person may be admitted as a dying declaration even though he does not, in express words, declare he knows he is about to die, or make use of equivalent language, if it be made to appear by his acts, statements and the surrounding circumstances that he visualized the situation and realized that death was impending, and if he did in fact shortly thereafter die. Ulrich v. Commonwealth, 181 Ky. 519, 205 S. W. 586.

Appellant contends that the declaration made by the deceased, including his use of the phrase "everything is all right," did not clearly indicate the declarant's consciousness of impending death and his hopelessness of the possibility of recovery. But our careful consideration of the full compass and import of the deceased's declaration has convinced us that such declaration fulfilled all legal requirements of what the courts have chosen over a period of protracted time to consider as legal evidence in many instances of this kind. Masters' declaration was made in extremity and when he was at the point of death. This is clearly established by the actual death itself which did occur within a few hours of the statement made by Masters. When Masters stated that he was "not going to get over this," he expressed a sufficient conviction, we think, that his hope of recovery was gone and that he was right then face to face with impending dissolution. It is our belief that the

trial court did not commit any error in ruling that Masters' oral statement, made to his father shortly before death and related by the latter on this trial, was legal and competent evidence.

The second complaint made by appellant is that the trial court committed error in rejecting certain other competent evidence offered by the appellant on the trial. The offered evidence was from a witness named George O. Parks. The occasion of the incident about which Parks offered to testify was about the date of May 7th, a month and a half before the homicide. Parks offered to state that Shearer's wife and the deceased Masters were seen by Parks on that occasion "in kindly a loving position * * * I think they were kissing one another." Appellant says this evidence was competent and should have been admitted on his trial for the purpose of showing that the deceased Masters possessed an evil intent towards appellant which pre-existed the occasion when Shearer killed Masters. We do not think this evidence that was offered to establish the intimacy that existed between Masters and Shearer's estranged wife had any probative value whatever to show any animosity on the part of Masters toward Shearer. And even if this evidence of their intimacy would have served to indicate some hostility on the part of Masters for Shearer, the undisputed existence of this intimacy was adequately proven by other witnesses on the trial. Shearer's wife herself testified on the trial concerning the intimacy of her relationship with Masters. Under these circumstances, the court is of the opinion that no harmful, if any, error was committed in excluding the evidence offered by appellant on the subject matter to which we have just referred.

The third and last contention made by appellant is that there should have been an instruction on the question of his emotional insanity upon the occasion in controversy. A study of this record does not disclose to us a single line of testimony indicating that appellant based his defense upon any theory that he was emotionally or otherwise insane at the time of this homicide. Counsel for appellant stated during the trial and in direct response to a question by the trial court that appellant's defense was that of self-defense. Every page of the testimony indicates that the trial began, proceeded and

concluded upon the sole theory of that one, single defense, namely, that Shearer was in the act of defending himself from impending bodily harm or what he reasonably concluded was impending bodily harm at the time he shot the deceased Masters. We find these interrogations made to Shearer and answered by him relating to his explanation for this tragedy:

"Q. And the only reason you shot him was he jumped on you? A. I had to take care of myself.

"Q. Never had any other reason for shooting Charley Masters other than he attacked you? A. That is right."

Since there was no defense made by appellant that embodied any kind of insanity plea, it obviously would have been erroneous for the trial court to have instructed the jury on any theory involving a defense of emotional insanity.

Wherefore, finding no error committed on the trial in prejudice of the substantial rights of this appellant, it becomes our duty to affirm the judgment of the trial court.

Judgment affirmed.