## Bates v. Commonwealth.

May 4, 1948.

A. J. May for appellant.

A. E. Funk, Attorney General, and John Talbott, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SIMS— Affirming.

Appellant, Charles Bates, upon being tried for the wilful murder of Theodore Scott, was convicted of voluntary manslaughter and his punishment fixed at confinement in the penitentiary for 21 years. He seeks a reversal because the trial court erred in: 1. Participating in the examination of a witness for the Commonwealth. 2. Improperly admitting testimony as a dying declaration. 3. Not instructing on the whole law of the case. And 4. The verdict is against the weight of the evidence.

Bates lived at Wheelwright in Floyd County and on the night of Aug. 19, 1947, attended a union meeting of miners some two miles from his home. On his way back he stopped to get a soft drink in a restaurant near the end of the bridge leading into Wheelwright. In the restaurant he met Theodore Scott and several other men with whom he spent some time in casual conversation. Scott and Bates were near the same age, the latter being 30 years old, and they had known each other since they were children. There had never been any trouble between them, nor did anything happen in the restaurant to excite or arouse either of them. The evidence indicates that Scott was drinking but Bates was sober.

We give Bates' version of the tragedy. The hour was growing late and the several men with whom the two actors in this tragedy were talking left the restaurant for their homes. Bates and Scott were alone outside the restaurant but near the front of it where a bright light burned. Scott complimented a wrist-watch worn by Bates and asked the latter to take it off so he could examine it. After a few minutes Bates asked for his watch, saying it was late and he was going home.

Scott did not give the watch back to Bates and when asked for it a second time said, "I'll kill you if you mention that watch to me again;" picked up a rock, threw it at Bates, who dodged and ran backwards; then Scott jerked a knife from his pocket, advanced on Bates against the latter's entreaty, "Don't do that, don't do that, I don't want to hurt you." By this time they were in reaching distance of each other and to protect himself from Scott's knife Bates drew a pistol from his pocket and shot Scott one time in the side. Scott fell forward on the ground and died in a hospital the next afternoon about 5:00 o'clock. Bates further testified that he did not intend to kill Scott but the pistol bounced up as he fired at deceased's leg and the ball entered his stomach; that the pistol contained six shells but he only fired one.

Harry Clark, the operator of the restaurant, ran out of his establishment upon hearing the shot and found Scott lying on his stomach some 50 feet from the front door of the restaurant. The bright light on the front of the building made Scott's body visible and Clark found no knife or other weapon in deceased's hands or by his body.

The only person near enough to Scott and Bates to hear what transpired between them when the trouble arose was Jim Noble, who testified for the defense. He corroborated Bates as to Scott threatening to kill him if he mentioned the watch again, as to Scott throwing a rock at Bates, and advancing on him with a knife. However, on cross-examination the witness admitted he did not see Scott actually throw a rock, but only that Scott was "motioning his hands like he was throwing something;" but Noble was certain he saw a knife in Scott's hand.

Lavonne Spence came out of a restaurant with Charles Hall and walked onto the bridge and saw Bates and Scott, but she did not hear anything said by either. Although the witness did not see what happened immediately preceding the shooting, she saw no motion or demonstration made by Scott with his hands; but she saw him fall and he had no knife or other weapon in his hand, and she stated none was found about his body. Charles Hall did not testify.

George Fain and Bob Hall, witnesses for the Commonwealth, testified they drove past these two men just before the shooting. They went across the bridge and were turning the car around just as the shot was fired and they testified Scott "was just standing there when he was shot."

Mrs. Flora Scott, mother of the deceased, visited him in the hospital the next day and he said to her around 10:00 o'clock in the morning before dying about 5:00 o'clock that afternoon, "Mom, I can't live." He then told her that appellant shot him while he was standing with his hands on his hips. Dr. Sirkle testified that when Scott was admitted to the hospital and before he was operated upon, Scott requested him to do what he could "to try to get him well." That later the patient got out of bed and walked 12 or 15 feet to get a drink of water.

It is worthy of note that neither the knife nor the watch was found on or about Scott's body as he lay face downward after he was shot. Clark, the first man to him, did not see a knife, nor did Lavonne Spence who went to deceased when he fell. No mention is made by any of the witnesses, other than appellant, of having seen Scott with the watch and he testified he never got his watch back. Appellant's case would have been much stronger had a knife been found in deceased's hand or by his body; or if the watch had been found on or about deceased, that fact would have added some strength to the defense.

From this brief resume of the evidence it is clear appellant's fourth contention, the verdict is against the weight of the evidence, cannot be sustained. Nor do we find merit in his first ground, the trial judge's participation in the examination of the Commonwealth's wit-

ness, Lavonne Spence, was prejudicial to appellant's substantial rights. The judge asked her some ten or twelve questions relative to the location of the restaurant with reference to the bridge and the highway, and as to the position of the witness on the bridge with reference to where Scott was standing. We agree with counsel for appellant that a trial judge should not unnecessarily direct questions to a witness. When it is necessary for him to do so, he should so frame his questions as to not indicate to the jury that he has any feeling for or against one side or the other. Here, the questions asked by the judge were innocuous and do not fall within the class of the indiscrete remarks of the judge condemned in City of Prestonsburg v. Mellon, 220 Ky. 808, 295 S. W. 1064, relied upon by appellant.

We cannot agree with appellant that when deceased said to his mother in the hospital some seven hours before his death, "Mom, I can't live," his account of the shooting is not admissible as his dying declaration because of his request to the doctor, "try to get me well." It appears he made this remark to the doctor when first admitted to the hospital and before his mother's visit to him the next day. However that may be, his request to the doctor does not negative the fact Scott realized that death was imminent when he told his mother he was standing with his hands on his hips when shot. Turner v. Commonwealth, 268 Ky. 314, 104 S. W. 2d 1087; Shearer v. Commonwealth, 302 Ky. 250, 194 S. W. 2d 494.

Appellant's third argument cannot be sustained. He was not entitled to an instruction on involuntary manslaughter on the ground he testified only one shot was fired with the intention to shoot Scott in the leg and with no idea of killing him, but the pistol bounced as it was fired which caused the shot to take effect in the victim's abdomen and to become fatal. It is a rule of long standing and one of practically universal application that a man is presumed to intend the consequences of his act committed under circumstances calculated to endanger human life. Where death results, it cannot with reason be said either that it was involuntary manslaughter or a killing by misadventure. York v. Commonwealth, 82 Ky. 360, 368, 6 Ky. Law Rep. 334; Maul-

ding v. Commonwealth, 172 Ky. 370, 189 S. W. 251; Titsworth v. Commonwealth, 298 Ky. 814, 184 S. W. 2d 228.

We find no error in the record prejudicial to appellant's substantial rights, and the judgment is affirmed.