**Joe Ray TURNER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 98–SC–0540–MR.

Supreme Court of Kentucky.

Sept. 23, 1999.

As Modified Dec. 16, 1999.

David Goin, Harrison & Goin, Scottsville, for Appellant.

A.B. Chandler, III, Attorney General, Frankfort, Christopher Brown, Assistant Attorney General, Frankfort, for Appellee.

COOPER, Justice.

Appellant Joe Ray Turner was convicted in the Allen Circuit Court of the murder of his father, Bill Turner, and was sentenced to imprisonment for ninety-nine years. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), and asserts two claims of reversible error: (1) admission of an alleged dying declaration in which the victim identified Appellant as his killer; and (2) failure to advise Appellant of his right to separate counsel pursuant to RCr 8.30(1).

Appellant and his father shared an apartment on East Main Street in Scottsville, Kentucky. During a trip to Paducah on October 18, 1997, Appellant told Suzanne Stotts that his father had given Ap-

pellant's "dope" (presumably narcotic drugs) to Cathy Scruggs, his father's girlfriend. Appellant told Stotts that "[i]f I don't get it back, I'm going to break the old m.f. in half;" and "[h]e's going to tell me where my dope is or I'm going to beat it out of the old s.o.b." Upon returning to Scottsville, Appellant got out of Stotts's car and entered Steven Burnette's place of business. Burnette testified that he gave Appellant a ride home and dropped him off at the East Main Street apartment at approximately 7:00 p.m.

At approximately 8:00 p.m., Scottsville police officer Perry Beach was dispatched to East Main Street where he found Appellant trying to flag down vehicles. Appellant told Beach that somebody had "beaten up" his father. When he entered the apartment, Beach found Bill Turner covered with blood and so severely beaten that Beach did not believe Turner would survive. Emergency medical personnel transported Bill Turner to Allen County Hospital, where it was determined that he had sustained four fractures to the base of his skull, multiple head and scalp lacerations, multiple facial and nose fractures, a collapsed lung and a ruptured spleen. He was then transferred to Vanderbilt University Hospital where he died of his injuries.

Appellant professed not to know who had assaulted his father. A search of Appellant's person produced a set of keys and his father's billfold containing the title to his father's automobile. Appellant claimed to have "no idea" how his father's billfold came to be in his pocket. On the following day, investigators found a bloody tire tool in Bill Turner's automobile, which was still parked in the driveway at the East Main Street apartment. The blood on the tire tool matched Bill Turner's blood and other blood samples taken from the Turner residence.

## I. DYING DECLARATION.

■   Bill Turner was conscious while in the emergency room at Allen County Hospital. In response to questioning by Officer Beach, he identified "my son, Joe" as the person who had beaten him. That statement was also overheard by Patricia Keen and two other witnesses who were in the emergency room when the statement was made. Keen, a registered nurse, described the severity of Bill Turner's injuries and expressed her belief that when he identified Appellant as his assailant, Bill Turner knew that he was going to die. Dr. Bruce Levy, who performed the post mortem autopsy examination, testified as follows at the KRE 104(a) hearing:

Q.   Do you have an opinion as a matter of reasonable medical probability as to whether a person, any person, who received injuries of the nature and extent which you observed in Bill Turner would believe that his or her death was imminent?

A.   Yes, I have an opinion.

Q.   Would you state that opinion?

Defense counsel: Objection.

Court: Overruled.

A.   My opinion is that it is more likely than not that a person who received the injuries that I observed both during the autopsy and from reviewing the medical records would have felt that his death was imminent.

On the basis of the testimony of Beach, Keen and Levy, the trial judge made a finding of fact that when Bill Turner identified Appellant as his assailant, he believed that his death was imminent. Thus, the statement was admitted as a dying declaration. KRE 804(b)(2).

■   The proponent of a dying declaration need prove only three elements: (1) the declarant is unavailable as a witness as that term is defined in KRE 804(a); (2) the declaration was made at a time when the declarant believed that his death was imminent; and (3) the declaration concerned the cause or circumstances of what the declarant believed to be his impending death. *See generally* R. Lawson, *The Kentucky Evidence Law Handbook* § 8.40,

at 412–14 (3d ed. Michie 1993). Elements (1) and (3) are not at issue in this case. At issue is whether the evidence presented to the trial judge was sufficient to support his finding of fact that Bill Turner believed that his death was imminent when he identified Appellant as the perpetrator of his injuries. If not, then the judge's finding was clearly erroneous and Turner's statement was incompetent hearsay.

As applied in a homicide case, KRE 804(b)(2) is duplicative of the pre-existing common law of Kentucky. Commentary to KRE 804(b)(2), Evidence Rules Study Committee, Final Draft (1989). Thus, it is instructive in interpreting this rule to examine common law cases pre-dating the adoption of the Kentucky Rules of Evidence. In most of the cases in which statements have been admitted as dying declarations, the declarant either expressed a belief in his impending death, *e.g., Slone v. Commonwealth*, Ky., 354 S.W.2d 497 (1962), or a witness testified that the declarant had been told that he was going to die, *e.g., Wells v. Commonwealth*, Ky., 892 S.W.2d 299, 302 (1995) (statement made after declarant was told that his situation was extremely critical and he could die at any moment). However, it has also been held that a declarant's belief in his own impending death can be inferred from circumstantial evidence. *Id.* (statements made shortly after the declarant was stabbed and while the fatal knife was still imbedded in his back); *Estes v. Commonwealth*, Ky., 744 S.W.2d 421, 426 (1987) (statement made while the declarant lay dying of a gunshot wound shortly after the shooting).

Although it is essential to the admissibility of a dying declaration that it be made under a sense of impending death, it is not absolutely necessary that the declarant express in so many words his apprehension of such death. It is enough if it satisfactorily appears in any mode that the declaration was made under that sanction, whether it be directly proved by the express language of the declar-ant, *or be inferred from his evident danger* or the opinions of the medical or other attendants stated to him, or from his conduct or other circumstances of the case, all of which are resorted to in order to ascertain the state of his mind.

*Petty v. Commonwealth*, 178 Ky. 483, 199 S.W. 20, 21 (1917) (emphasis added); *see also Slone v. Commonwealth, supra*, at 498–99; *Shearer v. Commonwealth*, 302 Ky. 250, 194 S.W.2d 494, 495 (1946); *Whitehead v. Commonwealth*, 200 Ky. 440, 255 S.W. 93, 95 (1923). The United States Supreme Court long ago held that a declarant's awareness of his own impending death can be inferred from proof of "the nature and extent of the wounds inflicted being obviously such that he must have felt or known that he could not survive." *Mattox v. United States*, 146 U.S. 140, 151, 13 S.Ct. 50, 54, 36 L.Ed. 917 (1892). Dr. Levy's testimony, along with the descriptions of Bill Turner's injuries by Beach and Keen, was sufficient to support the trial judge's finding that when Bill Turner identified Appellant as his assailant, he believed that his death was imminent.

■ Appellant complains that Dr. Levy did not state his opinion in terms of reasonable probability as seemingly required by a cautionary note in *Seaton v. Rosenberg*, Ky., 573 S.W.2d 333, 338 (1978), *viz*: "One last caution, the expert expresses his opinion as a probability or certainty, not a possibility, 'could have,' or the like." However:

■ 1. The cautionary note in *Seaton v. Rosenberg* was *dictum* at best. The seminal case on this issue, *Rogers v. Sullivan*, Ky., 410 S.W.2d 624 (1966), does not require an expert medical witness to use the magic words "reasonable probability." *Rogers* only holds that testimony so phrased satisfies the requirement that an issue requiring medical expertise be proven by "the positive and satisfactory type of evidence required to take the case to the jury on that question." *Id.* at 628. In other words, the requirement of "reasonable probability" relates to the proponent's

burden of proof, not to the admissibility of the testimony of a particular witness.[1]

■ 2. Even if the requirement of "reasonable probability" were a rule of evidence rather than a standard of proof, *i.e.,* an expert opinion would not "assist the trier of fact" as required by KRE 702 unless expressed in those terms, the rules of evidence do not apply to a ruling on the admissibility of evidence. KRE 104(a).

3. Dr. Levy testified that he had an opinion which was based upon reasonable medical probability and that his opinion was that it was more likely than not that a person with Bill Turner's injuries would have believed that his death was imminent. His testimony was not expressed in terms of "a possibility, 'could have,' or the like," as cautioned against in *Seaton v. Rosenberg, supra.*

■ Appellant further asserts that Patricia Keen was not qualified to express an opinion that Bill Turner knew he was going to die when he identified Appellant as his assailant. The decision as to the qualifications of an expert rests in the sound discretion of the trial court. *Ford v. Commonwealth,* Ky., 665 S.W.2d 304, 309 (1983), *cert denied,* 469 U.S. 984, 105 S.Ct. 392, 83 L.Ed.2d 325 (1984). In fact, the qualification requirement is itself a rule of evidence, KRE 702; and, to reiterate, a trial judge is not bound by the rules of evidence in ruling on the admissibility of evidence. KRE 104(a). Any possible error arising from the fact that Keen rendered her opinion in open court was harmless, since her opinion did not go to the issue of Appellant's guilt or innocence, but only to whether Bill Turner's statement was a dying declaration, an issue to be decided by the judge, not the jury.

## II. ALLEGED DUAL REPRESENTATION.

■ Appellant alleged that his father was having both an illicit sexual relationship and drug dealings with Cathy

Scruggs, and theorized that Scruggs was the murderer. On the morning of Bill Turner's murder, Scruggs had been arrested on narcotics charges and blood was found on a bed frame and mattress in her residence. However, the blood on the bed was tested and no match was found. Scruggs's narcotics charge was still pending as of the date of Appellant's trial.

Appellant attempted to call Scruggs as a witness. Because Appellant's attorney also represented Scruggs on the narcotics charge, another attorney was appointed to advise Scruggs of her Fifth Amendment rights. After consulting with appointed counsel, Scruggs refused to testify and was not called as a witness. Appellant now claims that the fact that he and Scruggs were both represented by the same attorney triggered the requirement of RCr 8.30(1) that the trial judge advise him of the fact of dual representation and the possibility of a conflict of interest.

RCr 8.30(1) applies only when two persons represented by the same counsel are "accused of the same offense or of offenses arising out of the same incident or series of related incidents." Scruggs was never charged with Bill Turner's murder. Appellant's trial counsel represented her on an unrelated narcotics charge and any possible conflict of interest was avoided by the appointment of independent counsel to advise Scruggs of her rights. Presumably, the result would have been the same had Appellant been represented by different counsel and Scruggs been advised of her rights by her own attorney. RCr 8.30(1) has no application to these facts.

Accordingly, the judgment of conviction and the sentence imposed by the Allen Circuit Court are affirmed.

All concur.

---

1. Prior to *Rogers,* the required burden of proof was "reasonable certainty." *Ingram v.*

*Galliher,* Ky., 309 S.W.2d 763 (1958).