# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 21, 2008
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2007-SC-00237-WC

ULESS MILLS                                                         APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
2006-CA-001781-WC
WORKERS' COMPENSATION NO. 05-00215

CTA ACOUSTICS, INC.;
HON. ANDREW F. MANNO,
ADMINISTRATIVE LAW JUDGE AND
WORKERS' COMPENSATION BOARD                                         APPELLEES

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

KRS 342.0011(1) defines an injury as being a work-related traumatic event that is the proximate cause producing a harmful change in the human organism but excludes a psychological, psychiatric, or stress-related change "unless it is a direct result of a physical injury."

An Administrative Law Judge (ALJ) determined that an explosion caused the claimant to sustain a work-related hearing loss but not to sustain a work-related psychological injury. The Workers' Compensation Board affirmed. The Court of Appeals affirmed, and the claimant appeals. We affirm because we are not convinced that the evidence compelled a favorable decision.

The claimant began working for the defendant-employer (CTA) in 1973. While

delivering paperwork in the course of his duties as a quality control inspector on February 20, 2003 he heard an explosion, saw a large fireball, was struck on the right side by wind from the explosion, and experienced an immediate hearing loss in his right ear. No debris from the explosion struck him. Several co-workers were burned so severely as to be unrecognizable, and a number of them died. The claimant filed two applications for benefits. In one he alleged that the explosion caused him to sustain a hearing loss. In the other he alleged that it caused a psychological injury.

Medical records indicated that the claimant's history of psychiatric problems preceded the explosion. Records from his family physician, Dr. Baker, indicated that he had taken Xanax since February 1990. The claimant testified that he had seen a psychiatrist in 1996, when his father was killed, and received a prescription for Zoloft. Dr. Reddy had treated him since April 2002 and prescribed Inderal for chest pain as well as Zoloft. In September 2002 the claimant requested Zoloft for anxiety and depression. At the hearing, he testified that his primary symptom before the explosion had been nervousness but that he was also tired and had difficulty sleeping, which he attributed to working twelve-hour shifts, four days per week.

The claimant testified that he sought treatment for his hearing loss on the day of the explosion and returned to work after three or four days. On October 28, 2003 he began to experience chest and back pain at work and was taken to the hospital. Physicians diagnosed a panic attack and referred him to Dr. Shahmalak, a psychiatrist.

The claimant did not work after October 28, 2003. He testified that his employer decided to change his job from an hourly position to a salaried one and that he was upset that the employer posted the job without asking him if he was interested. He

2

acknowledged taking Zoloft and Xanax before the explosion but stated that he began to experience flashbacks and suicidal thoughts after it occurred. He continued to see a therapist monthly, to see Dr. Shahmalak every three months, and to take Xanax, Prozac, Wellbutrin, and a sleep aid. He maintained that the psychological injury prevented him from working.

Dr. Shahmalak first saw the claimant on November 3, 2003. Taking a history of the present illness, he noted that the claimant had been under much stress recently. He had worked for his employer for 30 years, the past 11 in quality insurance, but now his job was being advertised. His wife had heard that one of the administrators had advised another worker to apply because she had a good chance of getting it. Also, a co-worker in his department had died "on Friday" at age 54, which had added to his stress and sadness. He felt depressed and had experienced suicidal thoughts. The claimant stated that he had felt nervous and depressed since his father died and felt very nervous, stressed out, and insecure about his job. Dr. Shahmalak received a past medical history which indicated that the claimant took medication for heart problems, that he had taken Xanax for the past 6-7 years, and that he "was in the explosion of CTA several months ago and he said after this he has had diminished hearing in the right ear." Dr. Shahmalak diagnosed severe depressive disorder, with the current stressor being the employer's advertisement of his job and his fear of losing his job. He recommended therapy sessions, which the claimant obtained. On November 3, 2003, the claimant reported to the therapist that he became very anxious when he returned to CTA to complete some paperwork and thought that he would never be able to return there. The therapist thought that he seemed to be suffering from post-traumatic stress

3

disorder (PTSD) related to the explosion. On November 6, 2003 the claimant reported that he was afraid that he would be forced to return to the production line and wished to be placed on medical leave because he felt unable to return to work. Dr. Shahmalak and the therapist signed the necessary paperwork. On December 3, 2003 the claimant reported flashbacks from the explosion and indicated that he wanted to draw disability. He was hospitalized for psychiatric reasons from February 3, 2004 through February 9, 2004, at which time Dr. Shahmalak diagnosed probable PTSD and major depressive disorder. Treatment records continue through December 10, 2004.

Dr. Weitzel examined the claimant at his attorney's request in June 2004, took a history, and reviewed medical records. He diagnosed PTSD, single episode, moderate to severe. In his opinion, the claimant had a 30% functional impairment (5% pre-existing active, 25% from the explosion). Dr. Weitzel noted that two tests were positive for malingering, that both IQ and PDSQ test results were unreliable, and that the MMPI results were skewed toward symptom exaggeration and unreliable. He stated, however, that the claimant fit the criteria for PTSD even without the embellishment.

The claimant also submitted a report from Dr. Cooley, who examined him initially in April 2005, took a history, and reviewed medical records. Dr. Cooley diagnosed probable PTSD, probable major depressive disorder, and malingering but did not determine the resulting impairment. He stated that if PTSD and/or major depression caused impairment, it would result from the explosion. He suspected that the conditions required treatment but was unable to say to what extent given the evidence of malingering. He noted that he found more significant signs of malingering than Dr. Weitzel reported. His examination was consistent with mild depression.

4

Dr. Ruth examined the claimant for the employer in June 2005, took a history and, like the other experts, reviewed medical records that included those from Drs. Baker, Reddy and Shahmalak. He diagnosed malingering and anxiety disorder. He based the diagnosis of malingering on the fact that numerous tests Dr. Weitzel, Dr. Cooley, and he performed documented the exaggeration of psychiatric symptoms as well as insufficient effort on tests of cognitive functioning. Dr. Ruth stated that in each psychiatric exam the claimant reported symptoms that were incompatible with a PTSD diagnosis, noting specifically that repeated, identical dreams and an eagerness to describe the traumatic event are not typical of the disorder. He also noted that the claimant exhibited no signs of distress when describing the traumatic event. Dr. Ruth stated that although the claimant attributed numerous medical complaints to the explosion, including various respiratory difficulties, gastrointestinal complaints, and peptic ulcer disease, medical records indicated that they existed previously. Likewise, although he denied previous psychiatric treatment, medical records revealed prior treatment with Xanax and antidepressants. Finally, although the claimant asserted that he sought psychiatric treatment due to the explosion, his chief concern at the initial visit with Dr. Shahmalak was worry that he would be reassigned to work for which he felt physically incapable. Dr. Ruth assigned a 4% (class II, mild) impairment but attributed it entirely to a pre-existing active disorder. He supported the latter statement with, among other things, the fact that Dr. Reddy's notes before the explosion documented the difficultly in diagnosing and treating the claimant's heart disease due to his anxiety.

In August 2005 Dr. Cooley re-examined the claimant and diagnosed PTSD, major depressive disorder, symptom exaggeration, and personality disorder. He

5

assigned a 25% impairment (class III, moderate), which he attributed to the explosion. He noted no pattern of malingering at that time.

Dr. Granacher examined the claimant for his attorney in October 2005, took a history, and reviewed medical records. He diagnosed PTSD, due to the explosion, and a panic disorder that had been present since 1990. In his opinion, the work-induced PTSD caused a 15% (class II) impairment.

In October 2005 Dr. Ruth reviewed Dr. Cooley's second report. He concluded that it demonstrated that the claimant was again malingering and did not document psychiatric symptoms or impairment that resulted from the explosion. He explained that the symptoms the claimant described were not bona fide PTSD symptoms and that testing revealed that he exaggerated symptoms.

In November 2005 Dr. Ruth reviewed Dr. Granacher's report and noted that it failed to describe any psychiatric symptoms that arose from a physical injury sustained in the explosion. He disagreed with Dr. Granacher's failure to characterize any portion of the claimant's psychiatric impairment as being pre-existing and active. He also found fault with Dr. Granacher's failure to address the numerous indicators of malingering, to explain the spurious findings on an intelligence test, and to administer a personality test other than the MMPI-2, and he disagreed with Dr. Granacher's conclusions.

Dr. Ruth reviewed a record from Appalachian Regional Hospital in Hazard regarding the claimant's October 8, 2005 admission and prepared a report in November 2005. He noted that the claimant had been charged with assault after striking his brother-in-law and taken to jail. While in jail, he reported that he had experienced suicidal thoughts since the explosion and was taken to the hospital and admitted. In Dr.

Ruth's opinion, the hospitalization was precipitated by malingering in order to gain a release from jail and neither the incarceration nor the hospitalization was in any way related to the explosion.

The ALJ concluded that the explosion caused a work-related hearing loss that warranted medical benefits but was not severe enough to warrant income benefits. Turning to the psychological claim, the ALJ found Dr. Ruth's opinions to be "most accurate and authoritative" concerning whether the claimant sustained a work-related psychological injury due to the explosion. The ALJ reasoned as follows:

> While the undersigned ALJ acknowledges that Mr. Mills witnessed a traumatic experience on February 20, 2003, this ALJ finds that the event did not cause a psychological injury. This ALJ agrees with the opinion of Dr. Ruth that Mr. Mills does not suffer from post-traumatic stress disorder as a result of the . . . accident at CTA. This ALJ notes that Mr. Mills returned to work at CTA and continued to work until he was hospitalized for problems that Dr. Shahmalak seemed to relate to insecurities concerning Mr. Mills' position at CTA. This ALJ also notes that Dr. Ruth, Dr. Cooley and Dr. Weitzel all diagnosed or found malingering or exaggerated symptoms. Clearly Mr. Mills was being treated for depression and anxiety prior to February 20, 2003.

The claimant complains that "Dr. Ruth's exam was directed solely toward whether there was a connection between the hearing loss and the psychiatric symptoms" and "refuse[d] to take into account the fact that the emotional trauma from the explosion [was] properly a part of this work injury." The claimant notes that at no time has he suggested that his hearing loss is the cause of his psychological injury. He "has maintained that the horrific events he witnessed, the fact that he saw his friends and co-workers being blown apart and burned to death, is what caused his psychological injury." Noting also that Dr. Ruth failed to state that his opinions were

7

based on reasonable medical probability, the claimant asserts that the ALJ erred by interpreting Dr. Ruth's opinion "to mean that the psychological injury has no connection with the explosion" and that substantial evidence failed to support the ALJ's decision. He concludes that the overwhelming credible medical evidence compels an award for the psychological injury. We disagree.

A claimant has the burden to prove every element of a claim, including that the alleged injury is work-related. KRS 342.285 provides that the ALJ's decision is "conclusive and binding as to all questions of fact" and that the Board "shall not substitute its judgment for that of the [ALJ] as to the weight of evidence on questions of fact." KRS 342.290 limits the scope of review by the Court of Appeals to that of the Board and also to errors of law arising before the Board. Construing KRS 342.285, the court determined in Paramount Foods, Inc. v. Burkhardt, 695 S.W.2d 418 (Ky. 1985), that the fact-finder has the sole discretion to determine the quality, character, and substance of evidence. The court determined in Caudill v. Maloney's Discount Stores, 560 S.W.2d 15, 16 (Ky. 1977), that the fact-finder may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. Special Fund v. Francis, 708 S.W.2d 641, 643 (Ky. 1986), explained that where the party with the burden of proof fails to convince the ALJ, the issue on appeal is whether the favorable evidence was so overwhelming that the decision was reasonable.

The word "injury" is a legal term of art that is defined in KRS 342.0011(1). Thus, a physician's opinion that a psychiatric condition does or does not directly result from a physical injury is of limited value in this case. The claimant does not allege that his

8

hearing loss caused his psychiatric condition. He alleges that the explosion caused it. Lexington-Fayette Urban County Government v. West, 52 S.W.3d 564, 566-67 (Ky. 2001), explains that a psychiatric condition that results from emotional trauma is not compensable as an injury. Instead, KRS 342.0011(1) requires a psychiatric condition to directly result from physical trauma. Officer West's psychiatric condition was an injury under KRS 342.0011(1) because it resulted, in part, from a physical assault by a knife-wielding suspect.

Rogers v. Sullivan, Ky., 410 S.W.2d 624, 627-28 (1966), stands for the principle that an expert medical witness is not required to use the magic words "reasonable probability." It explains that whether expert testimony is stated in terms of a probability or possibility is a question actually directed to the quality or degree of proof that is necessary to support a finding. Such proof must be "positive and satisfactory" and demonstrate a "reasonable certainty" or "reasonable probability" of the fact being proved. As explained subsequently in Turner v. Commonwealth, 5 S.W.3d 119, 122-23 (Ky. 1999), nothing requires a medical expert to use particular "magic words."

Dr. Ruth was of the opinion that the claimant's only physical injury was a hearing loss, but he was also of the opinion that the claimant did not suffer from PTSD, that he did suffer from anxiety, and that the entire impairment from anxiety existed before the explosion. His opinions were not equivocal or phrased in terms of possibilities. He stated them clearly and positively, and he supported them with references to the medical and psychiatric evidence. They constituted substantial evidence to support the ALJ's conclusions that the explosion did not cause the claimant to sustain a psychological injury and that he did not suffer from PTSD as a result of the explosion.

9

The decision of the Court of Appeals is affirmed.

Lambert, C.J., and Cunningham, Minton, Noble, Schroder and Scott, JJ., concur.

Abramson, J., not sitting.

COUNSEL FOR APPELLANT,
ULESS MILLS:

BEN THOMAS HAYDON, JR.
P.O. BOX 1155
118 E. BROADWAY
BARDSTOWN, KY 40004

COUNSEL FOR APPELLEE,
CTA ACOUSTICS, INC.:

DWIGHT T. LOVAN
JONES, WALTERS, TURNER & SHELTON, PLLC
1035 FREDERICA STREET
SUITE 120
P.O. BOX 787
OWENSBORO, KY 42302-0787

WALTER TURNER
JONES, WALTER, TURNER & SHELTON, PLLC
151 NORTH EAGLE CREEK DRIVE
ONE FOUNTAIN PLAZA
SUITE 310
LEXINGTON, KY 40509