**Opinion issued August 23, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00553-CV

———————————

**DEBORAH FLETCHER, ROBERT JACOBSEN, MELISSA JOHNSON, KAREN STEINER, and NANCY TREJO, Appellants**

**V.**

**ENERGY RESOURCE TECHNOLOGY GOM, INC., Appellee**

---

**On Appeal from the 127th Judicial District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-21094**

---

## MEMORANDUM OPINION

Appellants, Deborah Fletcher, Robert Jacobsen, Melissa Johnson, Karen Steiner, and Nancy Trejo, challenge the trial court's rendition of summary

judgment in favor of appellee, Energy Resource Technology GOM, Inc. ("ERT"), in their suit for breach of contract. In two issues, appellants contend that the trial court erred in granting ERT's summary-judgment motion and denying their summary-judgment motion.

We affirm.

## Background

In September 2006, ERT, having recently lost several employees after merging with another company, sent appellants, already employees at ERT, letters offering them various positions of employment and modifying their compensation. Stiener had started working at ERT in 2005, and Fletcher, Johnson, Trejo, and Jacobsen had started working at ERT earlier in 2006. Each letter contained the following provision:

> **Long Term Incentive**: Subject to approval by the Board of Directors or the Compensation Committee of the Board, on January 1, 2007, you will be awarded $100,000[1] cash. This cash award will vest over a five year period, commencing on January 1, 2008, with 20 percent of the total award vesting and 20 percent vesting each subsequent year until 2012. You will also be eligible for periodic Long Term Incentive Awards as they may be granted in the future at the discretion of the Board of Directors.

---

[1] Although each letter contained the same language, the amount of the employees' awards differed under the Long Term Incentive provision. Fletcher and Trejo were each to be awarded $100,000, Jacobsen was to be awarded $125,000, and Johnson and Steiner were each to be awarded $250,000.

Appellants continued working at ERT through 2007 and received their first payment under the Long Term Incentive provision on January 1, 2008. Johnson, Steiner, and Trejo left ERT later in 2008, Fletcher left ERT in 2009, and Jacobsen left ERT in 2010. ERT did not make any payments under the Long Term Incentive provision to appellants after they had left the company.

Appellants sued ERT for breach of contract, alleging that ERT had breached the employment contract by "failing to pay bonuses due and owing." They then filed a motion for partial summary judgment, arguing that the Long Term Incentive provision unambiguously entitled them to "future" payments "regardless of their employment status." ERT generally denied appellants' claims and asserted the affirmative defense of lack of consideration. ERT then filed its own summary-judgment motion, asserting that "the offer letters unambiguously require Plaintiffs to be employed at ERT on the date that the Long[]Term Incentive vests in order to be entitled to continued payment of the Long[]Term Incentive" and "[t]he offer letters fail for lack of consideration and are therefore unenforceable." The trial court granted ERT's summary-judgment motion and denied appellants' motion for partial summary judgment.

**Standard of Review**

To prevail on a summary-judgment motion, a movant has the burden of proving that it is entitled to judgment as a matter of law and there is no genuine

issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in its favor. *Id.* at 549.

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the trial court should have rendered. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

**Breach of Contract**

In their first issue, appellants argue that the trial court erred in granting ERT's summary-judgment motion and denying their summary-judgment motion because "[t]he employment agreement unambiguously awarded plaintiffs their full [Long Term Incentive] Benefits on January 1, 2007" and "any ambiguities in the agreements must be construed against ERT." In their second issue, appellants argue that the trial court erred in granting ERT's summary-judgment motion because "the employment agreements are enforceable as a matter of law" and appellants "have raised a genuine issue of material fact."

4

Our primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex. 2006); *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex. 2005). Usually, the intent of the parties can be discerned from the instrument itself. *ExxonMobil Corp. v. Valence Operating Co.,* 174 S.W.3d 303, 312 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). When an issue regarding the construction of a contract is presented, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Seagull Energy E & P, Inc.,* 207 S.W.3d at 345. Contract terms will be given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Dorsett,* 164 S.W.3d at 662. A contract is ambiguous only if its meaning is uncertain or if it is subject to two or more reasonable interpretations. *Seagull Energy E & P, Inc.,* 207 S.W.3d at 345; *Edascio, L.L.C. v. NextiraOne L.L.C.,* 264 S.W.3d 786, 796–97 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). If a written contract is worded in such a way that it can be given a definite or certain legal meaning, then the contract is not ambiguous. *SAS Inst., Inc. v. Breitenfeld,* 167 S.W.3d 840, 841 (Tex. 2005). An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Tex. Farm Bureau Mut. Ins. Co. v. Sturrock,* 146

5

S.W.3d 123, 126 (Tex. 2004). When the parties have entered into an unambiguous contract, the courts will enforce the intention of the parties as written in the instrument. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 731 (Tex. 1981). "We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)).

Appellants first argue that "[p]roper application of the rules of construction to the employment agreements . . . lead to only one reasonable interpretation of the LTI provisions—that [appellants] were unequivocally awarded their full LTI benefits on January 1, 2007, regardless of their employment status after that date." Appellants assert that the employment letters unambiguously grant the full amount under the Long Term Incentive provision on January 1, 2007, but "possession of the LTI (therefore, actual payment) was to occur on an incremental basis, once per year for the following five years."

ERT asserts that the employment contracts "unambiguously require [appellants] to be employed at ERT on the dates when the Long Term incentive payments *vest* in order to be entitled to receive incentive payments under the Long Term Incentive pay provision." ERT further asserts that appellants' proposed

6

interpretation "violates contract construction rules," "is blatantly unreasonable," and would "convert[] their *long* term incentive payments into a *short* (14 week) incentive" or "incentives to quit."

We begin our analysis by consulting the express language of the disputed provision considered in light of the entire contract. Here, the contract, under the title, "Long Term Incentive," provided,

> [O]n January 1, 2007 you will be awarded $[____] cash. This cash award will vest over a five year period, commencing on January 1, 2008, with 20 percent of the total award vesting and 20 percent vesting each subsequent year until 2012.

"Vest" is generally defined as "to give (someone) the legal right to . . . property." THE NEW OXFORD AMERICAN DICTIONARY 1879 (2001). It means "to confer ownership (of property) upon a person," "to invest (a person) with full title to property," or "to give (a person) an immediate, fixed right of present or future enjoyment." BLACK'S LAW DICTIONARY 445 (9th ed. 2009). "Vesting" is generally defined as "the conveying to an employee of an *unconditional* entitlement to a share in a pension fund." THE NEW OXFORD AMERICAN DICTIONARY 1879 (2001) (emphasis added). The plain and ordinary meanings of "vest" and "vesting" indicate that a benefit "vests" with an employee when the employee receives "full," "fixed," or "unconditional" right to the benefit. Thus, its

use implies that, prior to vesting, the benefit is somehow not "full," "fixed," or "unconditional."[2]

In construing the provision in light of the entire contract, we note that the disputed language falls under the title, "Long Term Incentive." "Incentive" is defined as "a thing that motivates or encourages one to do something." THE NEW OXFORD AMERICAN DICTIONARY 858 (2001). The title "Long Term Incentive" indicates that the parties intended the award to "encourage" or "motivate" the employee to remain with ERT "long term," accomplished by making the award contingent on the employees' continued employment at ERT. And this comports with the plain and ordinary meaning of the word "vesting" as indicating a granting of "full" and "unconditional" rights to the award. Before "vesting," the award would necessarily be conditional or otherwise not "full" or "fixed." A plain reading of the contract indicates that the use of the words "vest" and "vesting," under a provision entitled, "Long Term Incentive," was intended to make the award contingent on the employees' continued employment at ERT through the dates the award would vest.

---

[2] We note that this interpretation of the term "vest" comports with case law discussion of the term in the context of property rights. *See, e.g., City of Houston v. Guthrie*, 332 S.W.3d 578, 597 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("A right is 'vested' when it 'has some definitive, rather than merely potential existence.'").

8

Appellants assert that this interpretation "renders the 'award' clause completely meaningless" and "the only reasonable interpretation" of their contracts is that they "were *granted* the full amount of the LTI as of January 1, 2007, but *possession* did not occur immediately." "Award" is generally defined as "to give or order the giving of (something) as an official payment, compensation, or prize to (someone)" or "an amount of money paid to someone as an official payment, compensation, or grant." THE NEW OXFORD AMERICAN DICTIONARY 111 (2001). However, nothing in the plain and ordinary meaning of "award" indicates that it is necessarily unconditional. Indeed, as explained above, the fact that the awards were apparently "unvested" until January 1, 2008 indicates that the awards were conditional. To adopt appellants' interpretation, we would have to construe "vest" to simply mean "to pay," which is contrary to the plain and ordinary meaning of "vest" as granting "unconditional" or "full" rights to property.

Appellants' argument that the contracts' use of the word "award" granted them full rights to the payment and the "vesting" of the awards granted them only the right of possession, without regard to their employment status, also fails to account for the clearly stated intent that the award act as a "Long Term Incentive." Appellants' interpretation would grant them full rights to the award as long as they remained employed at ERT from September 15, 2006, the date of the offer letters, to January 1, 2007, the date of the "award," a span of only three and one-half

9

months. Construing the contract from a "utilitarian standpoint," we decline to adopt this interpretation, which would negate the "particular business activity being served" of a "Long Term Incentive." *See Frost Nat'l Bank*, 165 S.W.3d at 312. Accordingly, we hold that the Long Term Incentive provision in appellants' contracts necessarily required that they be employed at ERT on the "vesting" dates to be entitled to their awards.

Finally, appellants attempt to rely on the testimony by deposition of current ERT employees that ERT's president "expressly represented to [appellants] that their LTI Benefits were theirs to keep beginning January 1, 2007" and other letters to different employees that explicitly required continued employment. However, having held that the plain language of the contracts necessarily requires that appellants had to remain at ERT on the dates that their awards vested in order to collect their Long Term Incentive, we may not consider appellants' parol evidence in construing the contract. *See, e.g., Edascio, L.L.C.*, 264 S.W.3d at 797 ("[W]e may not consider extrinsic evidence to contradict or to vary the meaning of unambiguous language in a written contract in order to create an ambiguity.").

We hold that the trial court did not err in granting ERT's summary-judgment motion and denying appellants' summary-judgment motion.

We overrule appellants' first and second issues.

10

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.