RENDERED: FEBRUARY 16, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0323-MR

COMMONWEALTH OF KENTUCKY            APPELLANT

v.        APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE BRIAN C. EDWARDS, JUDGE
ACTION NO. 21-CR-001166

ROBERT MCDOWELL             APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: EASTON, KAREM, AND TAYLOR, JUDGES.

KAREM, JUDGE: The Commonwealth of Kentucky appeals from an opinion and

order of the Jefferson Circuit Court granting Robert W. McDowell Jr.'s motion to

exclude statements and identifications made by a shooting victim identifying

McDowell as the perpetrator. The Commonwealth argues that the trial court

abused its discretion in ruling that the statements were not admissible under the

dying declaration exception to the hearsay rule.[1]  Upon careful review, we vacate and remand for further findings.

## FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of February 24, 2021, Rayshaun Peyton was shot eleven times as he walked down the sidewalk in Louisville.  Peyton, who was twenty-two years of age, suffered gunshot wounds to his left chest wall, his right eye and mouth, his left inner thigh, his right inner thigh, his testicles, and his penis.  He was transported to the University of Louisville Hospital where he was placed in the Intensive Care Unit.  CT scans showed the bullets had fractured his ribs and vertebrae, causing a spinal cord injury that rendered him quadriplegic.  Surgery was performed to repair his right superficial femoral artery and the injuries to his penis and scrotum, and he was put in a medically-induced coma and placed on mechanical ventilation.  Peyton's parents were allowed to stay with their son 24 hours per day, against COVID-19 protocols in place at the time.  Peyton's father, Rolando, testified, this was "due to the situation; they didn't know if he was going to make it or not."

On March 12, 2021, Peyton was removed from the medically-induced coma.  At that time the doctors removed the ventilator and replaced it with a

---

[1] We note that McDowell's motion asserted a violation of his 6th Amendment Confrontation Right even if the statements qualified as dying declarations.  The circuit court and the parties on this appeal did not address this, which remains an open question under Kentucky law.  *Lewis v. Commonwealth*, 475 S.W.3d 26, 37 n.6 (Ky. 2015).

tracheostomy tube, which allowed him to speak for the first time since the shooting. On that day, and the days that immediately followed, Peyton made the statements and identifications that are at issue in the case *sub judice*. The trial court described Peyton's first statement as follows:

> During this period of improvement, Mr. Peyton's father testified that on March 12, 2021, he asked Mr. Peyton "who did this to you[?]" to which Mr. Peyton responded, "Bobby shot me."

Rolando, hoping to discover the identity of "Bobby," enlisted the help of his niece. She found a social media post relating to Peyton's shooting which Rolando, in turn showed to Peyton, at some point after March 12, 2021, but before March 15, 2021. Rolando testified that, upon seeing the post, Peyton was reluctant to name the shooter. However, he further testified that although his son didn't want to name the shooter, "we were going to do this today because I didn't know if my son would be here tomorrow." Ultimately, Peyton identified his shooter and Rolando passed the name along to the lead detective on the case.

On March 15, 2021, two detectives visited Peyton and presented him with a six-person photo pack. Peyton's condition ebbed and flowed during this time, and on March 15, 2021, he was not capable of speaking. But he selected McDowell from the photo pack by nodding his head and raising his eyebrows.

Dr. Daniel Dierfeldt, a palliative care physician, testified that on March 19, 2021, he was notified that Peyton was one step from a code blue, a

medical term for death. Dr. Dierfeldt explained that his role was to support the patient and his family. Dr. Dierfeldt described the prognosis at that time as "very, very dire." He told Peyton's mother that Peyton was having difficulty making a recovery and that he might not survive. Dr. Dierfeldt testified that Peyton was unable to breathe without the machines and he was unable to move because he was quadriplegic. He told Peyton's mother that if care was withdrawn Peyton would live for minutes or hours, and if care continued, he would live for weeks or months. Peyton's parents ultimately decided not to withdraw care.

Peyton was discharged from the hospital on April 10, 2021. He was transferred to several facilities over the following months. Peyton died on January 25, 2022, approximately ten months after he identified McDowell as the shooter.

On June 7, 2021, McDowell was indicted for criminal attempted murder, assault in the first degree, and possession of a handgun by a convicted felon. His attorney moved to exclude all statements made by Peyton to Rolando and the police as inadmissible hearsay. The Commonwealth filed a response, arguing in part that the statements were admissible as a dying declaration. After hearing testimony from Dr. Dierfeldt and Peyton's parents, the trial court entered an order granting McDowell's motion. The trial court based its decision on two factors: first, that a lengthy period elapsed between the time the statements were made and Peyton's death, and second, that Peyton's condition had improved at the

-4-

time he made the statements incriminating McDowell.  This appeal by the Commonwealth followed.

## STANDARD OF REVIEW

"[W]e may reverse a trial court's decision to admit evidence only if that decision represents an abuse of discretion."  *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007).  An abuse of the court's discretion only occurs if its ruling is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."  *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).  When, as in this case, the trial court conducted a lengthy evidentiary hearing, its findings of fact are reviewed for clear error.  Kentucky Rules of Civil Procedure (CR) 52.01; *Turner v. Commonwealth*, 5 S.W.3d 119, 122 (Ky. 1999), *as modified* (Dec. 16, 1999).  A finding is not clearly erroneous if it is supported by substantial evidence.  *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998).

## ANALYSIS

*Hearsay* is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Kentucky Rules of Evidence (KRE) 801(c).  A statement is defined as "[a]n oral or written assertion; or . . . [n]onverbal conduct of a person, if it is intended by the person as an assertion."  KRE 801(a).  The parties agree that

Peyton's verbal identifications of McDowell as the shooter to his father and his subsequent nonverbal identification of McDowell in the photo pack qualify as hearsay prompting McDowell to ask the court to exclude the statements. McDowell styled his motion before the court as, "Motion In Limine to Exclude All Statements and Identifications Made By Mr. Rayshaun Peyton to Witnesses and/or Investigating Officers as Inadmissible Hearsay." The Commonwealth responded in kind and the court ultimately ruled as follows:

> The Commonwealth has presented no authority in support of their contention that *these statements* made 10 months prior to Mr. Peyton's death can qualify as dying declarations.

(Emphasis added.) The court and parties erroneously treated the various statements of Payton as one whole statement when in reality Peyton made three distinct and individual statements.

Hearsay is generally not admissible, but an exception exists for "*a statement* made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be his impending death." KRE 804(b)(2) (emphasis added). The exception is made for these types of statements because they are seen as being uniquely reliable:

> Dying declarations are admitted as evidence because . . . the immediate expectation on the part of one making it will silence every motive for falsehood, remove every

feeling for revenge, and operate most powerfully upon the mind to cause it to adhere strictly to the truth; the solemnity of the occasion being looked upon and regarded as in a measure obviating the necessity, and taking the place, of the sanctity of an oath.

*Kelly v. Commonwealth*, 119 S.W. 809, 810 (Ky. 1909) (citation omitted).

The state of mind of the declarant is of paramount importance in determining whether a statement qualifies as a dying declaration.

The vital question in each case is: Did the one making the statement, *at the time it was made*, believe that he would die from the effects of the injury, and had he given up all hope of recovery? Where these two questions have been answered in the affirmative, the declaration has invariably been admitted. The fact that the one making it lived a few hours or several days does not properly enter into a consideration of the question, the lapse of time between the statement and the death not being regarded as material, but the state of mind of the one making the declaration is the all-important question.

*Id*. (emphasis added).

Using this analysis, testimony of events following the statements are inconsequential. The only mandatory subsequent event to be considered by the court is the declarant's death. Clearly, events following a statement could not have influenced the declarant's state of mind at the time each declaration was made. And the rule itself mandates the analysis focus on the state of mind of the declarant when the statement was made.

The trial court understandably, based on arguments by counsel, treated Peyton's statements as a whole. However, the testimony is clear that Peyton made three separate statements; the first to his father upon awakening from the medically induced coma on March 12th; the second, sometime after March 12th but before March 15th, again to his father; and the third on March 15th to the detectives when presented with a photo pack. The court must analyze each of the three statements individually, deciding as to each if it should be admitted as a hearsay exception.

The trial court's conclusion[2] – that there was simply insufficient evidence to show Peyton believed he was in imminent danger of death when he made the statements incriminating McDowell – is a general conclusion regarding Peyton's three statements and as such is vacated. The court must analyze each of the three statements individually and make findings on each.

## CONCLUSION

For the foregoing reasons, the Jefferson Circuit Court's order granting McDowell's motion *in limine* is vacated and this matter is remanded back to the trial court. The trial court shall make findings as to each of the three statements McDowell seeks to exclude holding evidentiary hearings if necessary.

---

[2] While the trial court commented on the declarant's condition when the statements were made, the commentary focused on the intervening period between the statements and death. The trial court did not make a specific finding as to whether the declarant believed he would die as a result of his injuries.

-8-

ALL CONCUR.


BRIEFS FOR APPELLANT:           BRIEF FOR APPELLEE:

Daniel Cameron                Jared Travis Bewley
Attorney General of Kentucky    Frankfort, Kentucky

Rachel S. Wright
Matthew Kuhn
Assistant Attorneys General
Frankfort, Kentucky